We'll now move to the final argument for the morning, and that's U.S. Liability Insurance v. WW Trading Co., Inc. Let me just confirm that counsel's on the line. Mr. Verveniotis, are you here? Yes, Your Honor. I'm here. And Mr. Eagle? Yes, Your Honor. Thank you. All right. Okay. So, Mr. Verveniotis, you've got 10 minutes total, but you reserved one minute for rebuttal. So, you may proceed. We'll give you a warning when you get to the one-minute mark on your first Okay. Thank you, Your Honor. May it please the Court, I represent the insurance company, United States Liability. I know there's a lot of issues that we've briefed and quite an extensive record, including the trial, but I'm going to focus on the de novo review function of the Court. The clear issues of law here, I know there are some issues of fact that we're debating back and application of a Massachusetts case as precedent when there's New York law to the contrary, as to one exclusion and another exclusion that the Court ultimately held a trial, but on a tangential issue, whether one piece of work was related to another piece of work, when all the evidence was that they were all one job, paid with one price and everything. So, let me focus on Your Honor's de novo function. First, the exclusion that has the several components that the Court termed the work-related exclusion. There's a first component that specifically says when somebody is an employee or working for the named insured, that that's going to be excluded. Then there's a second exclusion, B, that specifically addresses claims by any contractor that the named insured may somehow in any way possible become liable for. In New York, that's clearly addressing labor law situations. When somebody who is in a case because they have some relevance to a premises where work is being performed, there's an accident, everybody gets sued, including like in this case W&W, the exclusion is different and the facts are different than the benchmark case in the First Circuit which applied Massachusetts law. First of all, in the benchmark case, not only was it applying Massachusetts law where New York law says the interpretation of the word any contractor is not vague. Can you explain to me what cases are you relying on that would say that an employee who is an employee of a contractor who is a contractor for a different party, for a landlord, comes within this kind of insurance exception? The cases in my main brief start from page 42, Your Honors, to 50. Briefly, there's a case called Essex in the Second Department, 2013. There's a case called Campo Verde in the Second Department, 2011. There's a specific case in the 720-730, all of them addressing situations in which the named insured is not the one that hired the contractor, yet the claims, the cross-claims, which I must add here, it's important what the situation of the underlying state court case is because it dovetails exactly with paragraph B of the exclusion. This is not a case in which the injured person is suing the named insured. This is a case that falls exactly into the provision of liability that the insured may have under any capacity because the liability of the contractor's employee has been assessed and was assessed at the time of summary judgment. It was part of the record at summary judgment in the underlying state court case as against the other tenant in the building, and the claim was a claim for contribution and indemnification against our named insured. That falls entirely within the situation of the B provision because we did not hire this contractor is the argument. Now, there are some facts about initially was reported that our insured hired this painter. There are some issues about them being connected. Is the work done for the benefit of your insured? Absolutely, your honor. The evidence is that they concocted a lease later on, supposedly that they didn't occupy the first floor. I thought you weren't talking about the facts. I thought you were saying that as a matter of law, even taking the facts in the light most favorable to the other side, this was simply and plainly covered by this exclusion. I was trying to answer your question, your honor. Yes, that's what I am arguing, the law, but there really is no dispute as to the facts about the work that was done. It was assessed in the underlying case. As a matter of fact, in the decision in the state court, they say while they purport to have a lease, it's clear that they are the tenants on the first floor. The work that was done where the guy was injured was worked on the first floor, exactly in their space. What they have is they have freezers in that space where all the seafood was being kept. Obviously, there was some cold or condensation that made not only the place cold, but also rusted up because of the condensation of air and water in the atmosphere rusted up various parts of this entire building. In this first floor area, where the freezers were, they put some insulation. This argument that you're making now is not about de novo review, isn't it? I thought this exclusion was the one on which there was a trial, or am I wrong? No, your honor. The other one, which I'll get to, the construction operations exclusion. You're talking about the employee exclusion. The employee exclusion, that was decided on summary judgment, right? I got it. The employee exclusion, the minister of any other, you would concede that unless that exclusion is crystal clear and admits of no ambiguity, then you lose, right? Your honor, the case law in New York is that it's not ambiguous. It's been repeatedly upheld by the state courts in these kinds of contexts. When somebody's seeking another defendant, he's seeking cross-claiming against somebody who didn't hire the person who was injured or that contractor. The cross-claims, paragraph B, clearly applies here. The law in New York is contractor, unlike in Massachusetts, apparently, where the word contractor is ambiguous. Contractor is not ambiguous in New York. Your honor's held in a summary opinion in the American Colony case that I cite in my papers, an analogous situation. There was a contractor that the insured had hired, and then there was a phrase in an exclusion that said, any contractor, almost analogous to our situation. The issue for the court to decide is, does any contractor mean any contractor, or does any contractor mean only the people other than the kind of the reverse, other than the one that this NYCHA had working for them there? The court said, any contractor is not ambiguous in New York. Any contractor must be given its plain meaning, contrary to what Benchmark says in the First Circuit, applying Massachusetts law. In New York, it's not ambiguous to say any contractor. As a matter of fact, given the wording of this exclusion, you would negate Paragraph 2 if you made it the same as Paragraph 1. Paragraph 1 is the one that says, if you're working for the insured, Paragraph 2 is the one that says, any contractor. Why? Because in New York, there is a labor law. The purpose behind this in the insurance company's understanding is that even if somebody is not working for you, you could be held responsible in New York. And they put any context under any way. That doesn't just limit it to labor law liability. That says any way. So you're saying that if the employee of the insured drove his forklift along the sidewalk and knocked down a ladder like this, that was where a contractor was working repairing the building next door? That would be, it's any contractor? Well, I think so, Your Honor. But you kind of took me away from my facts in my case. I'm not sure about that hypothetical. Because you said any contractor. And I was trying to come up with a contractor who had no relationship at all to the person who, the employer of the person who the accident. And now you're saying, well, maybe it isn't any contractor. And then the question becomes, if it is a contractor who bears some relationship to the insured, what is the nature of that relationship? What needs to be established to distinguish the person next door from the person here? Well, I'm not saying that it wouldn't apply in your fact pattern, Your Honor. What I said is your fact pattern takes you away from my fact pattern. But if you don't apply it in any situation, you then take out from the exclusion the language that says any liability that may arise under in any respect. The point of that second exclusion is not to address somebody who's your employee or your contractor or working for the benefit of your business. Well, there's no contractors in sub one. There's employees, volunteer workers, temporary workers, or casual laborer. That's what that's exactly the point that I'm making. The first one has to do with people that are working for you. The second one says not just contractors that are working for me. If they if that's what the intent was, they would have put the word contractors who are working for me, then we're not going to we're not going to cover it. It says differently than the first paragraph, which says for those people who are working for me under the contract portion. So what in paragraph two, what does for which any insured may become liable in any capacity modify? Does that work all the way back to services? That hearts back to the liability of any insured bodily injury? Yes, exactly. To go to your hypo to the hypothetical that was phrased before that all inclusive phrase means to say that in New York where contractors have a special statute where they can sue anyone under any circumstances, not only when somebody does something, as in our case, actually hits the contractor, but also other types of claims. This is a catch all. This is a broad, all all inclusive provision that says any liability where you're dealing with a contractor because contractors, we know are a special litigant, a special plaintiff, or employees of contractors are special litigants. So in my in my hypothetical, that that labor law would apply. Because in my hypothetical, you've got direct liability. The servant of the insured is the one who caused the accident. And then they get sued. And you're saying that because they're the person who was injured is a contractor for somebody in some capacity. And the insured is liable in any capacity, including the capacity of the employer of the person who ran the forklift over this person who happens to be a contractor for somebody that that would exclude coverage. Well, if the claim, as in our case, Your Honor, has to do with a labor law claim, which then another defendant has become liable for, and the only existing remaining claim in the lawsuit is to pass that labor law claim over to somebody else under any capacity, the any capacity language would apply to such a situation. Because there you have it's almost like this provision was exactly written for this context. Somebody's held liable. Yes. I wanted to just ask you to address one of the cases relied on by the district court. And that was merchants mutual insurance versus Rutgers. In which the language is given the plain meaning of the exclusion, its purpose is to relieve the insurer of liability for a claim arising out of bodily injury to an employee of a contractor in the insured. The issue in that case, much like in benchmark, also involved a different context. I understand that. But you seem to be just ignoring the last phrase in privity with the insured. That's the language from a New York State case interpreting a similar, almost identical, exclusion. And you seem to be suggesting in privity with the insured is not required. Am I right about that? Is that your argument? Yes, that's exactly my argument, because I think that decision to the extent it's inconsistent with the other cases that are subsequent to that. I've cited to your second department cases and first department cases, 2013 and 2011. I've cited to you cases that are subsequent to merchants. And just quickly to touch on on the distinction between merchants and benchmark. Those were cases in which one contractor is an insured and an employee of a totally other contractor is injured. The work of this blazer has nothing to do with the work of that electrician. So therefore, there's no connection between the works of the separate contractors. This is not a policy that we insure a contractor. We're not insuring a contractor. My client doesn't insure a contractor in this case. My client insures somebody who was a tenant on the first floor premises and therefore has liability because occupiers of premises could have labor law liability if somebody gets injured on their premises. That's why I say this exclusion clearly falls within. Let me quickly move to the construction operations in which we had a trial about one thing, but there was really no trial needed. The trial supposedly was to whether there was a connection between one component of the work that was all contracted at once, paid with one price, negotiated once only in the beginning, lasted for 30 days. The trial was about whether they were connected. Why isn't that just a fact question? I understand your point, but it seems to me not unusual for a householder, for example, to hire somebody to do some major work, build a new addition to the garage, and while you're here, also paint the living room. The question is, is that all part of a renovation? Painting the living room, the argument goes, from your adversary, which is analogous to what's going on here, is just ordinary maintenance. It's not a renovation. Adding the garage or redoing the kitchen from the studs up is a renovation. These are two separate things. Even if they were built by the same general contractor in charge of it, presents different people to do different jobs, and one job is distinguishable from the other. Why is painting a ceiling beam part of a renovation? Because somewhere else in the building, the same contractor is doing some more dramatic construction work. The facts as to what actually was done are not in dispute. It's only what the lawyers spin on it that is in dispute. The facts are not that after starting one part of the job, we say, you know what, can you also do this and that? No, not after starting, from the beginning. From the beginning, there's two things that the guy is hired to do. One, he sends workers to do one thing, and then he sends workers to do a different thing. Even if he sent the same worker, why is it not reasonable that in one thing, it's part of a renovation project, and in the other, it's routine maintenance that's being done by the same person, and then built at the same time, why isn't it reasonable for the district court to conclude that these are separate, and that one of them is not a renovation, is not an exclusion? Well, the evidence was that because it was one job, it was one project, and as I tried to point out, both at the summary judgment level and at trial, the court below, the liability that we're applying, and in quoting the portion of the labor law that was applied, the court below specifically put dot, dot, dot, where the words painting was, showing that the court wasn't considering this to be just a separate painting job. They weren't just saying the labor law liability here arises from a separate painting job. The court below, the liability that we're... The issue is whether that liability is covered under an exclusion that doesn't talk about the labor law. It talks about the nature of the work being done. Your Honor, there cannot be a difference between the liability that is being asked to be covered, and how do you assess whether there's coverage for it? You can't say, I'm only going to deal on coverage on some hypothetical concept as to what is being covered. What I'm saying, and what I argued to the court below, respectfully, is that you can't decide the coverage issue without looking at the exact remaining claim that is being passed, and how it arrived at being, that is being passed to the named insured to say whether that specific claim, not some hypothetical claim, this specific claim is covered. This specific claim, the court said, you had a 30-day job in which you were doing a variety of things. I find this all to be under the labor law, not just a separate painting job. This was a big job that they were doing for a month in this place. The court below assessed liability against W&T on the basis of the one project, and that it was all one job, and that's why the labor law provision... If it was just a painting job, it wouldn't be covered by the labor law? No, that's not what I'm saying. I'm saying the court below... Defendant is liable under the labor law for a painting job, so be it, but that's a different question than whether liability for a painting job is excluded by a provision that talks about renovations in the insurance policy. Those are different questions, aren't they? Your Honor, what I'm trying to point out, yes, those are different questions in different hypotheticals, but I'm saying in this specific situation, this court said in the ruling assessing the liability that it was not limiting it to the painting. How do I know that? Because the court didn't say only because the painting. As a matter of fact, when quoting the statute that the court was held was violated and on which liability, the court didn't even include the words painting. It put dot, dot, dot, and throughout the whole decision, they're not referring just to the painting aspect, saying it's a separate job. They're saying because... But it's not, it's not, it doesn't matter to the, apparently, to the issue of liability, whether it's one job or two, does it? The liability would exist whether it's one job or two. I don't know whether it would have mattered to the court below. All I know is that the actual decision spends a lot of time discussing the entirety of the job, treating it all as one job. But why? But why? If it doesn't matter to the decision of the state court in finding liability, whether it's one job or two, then that court doesn't have to concern itself with that issue. But the federal court, considering the insurance policy, has to decide whether this particular work comes within the exclusion, doesn't it? Your Honor, I don't know why it would have or wouldn't have mattered to the state. Well, maybe you better know that if you're saying that what the state court decided controls what the federal court should do. Doesn't that depend on what the state court was deciding? It matters that the thing that is being sought for coverage is what it is. I don't know if it would have mattered if the court issued a decision with wording or other wording. What I'm saying is the fact that the court decided as it did is a known object. We have to take that as the premise upon which coverage has to be founded or decided or whether it is or is excluded. Whether it would have mattered or wouldn't have mattered for the court to focus only on painting and say there were separate jobs, I don't know. All I know is the truth is and the fact that we are stuck with is that the court didn't do that. The court didn't say there's separate jobs. The court didn't focus on painting. As a matter of fact, excluded the words painting from the citation of this provision that was violated. I'm saying that's a known fact. Given that known fact, you have to take that as a finding of the lower court that the entire job was the basis for the liability against W&T and Wong and the basis that now liabilities sought to be passed to W&W. All right. I think we're way over. I think this is almost longer than the trial now, Mr. I'll address rescission briefly and I can on rebuttal as well. But I'm not sure you get to address a new issue on rebuttal that you didn't. Rebuttal depends on whether you're rebutting anything. Well, can I have just one extra sentence? Obviously, I reference all my briefing on rescission. There is a lot of factual components, but the legal standard as to what the insurance company's explanation is and the process that happened and that it was never waived was not disputed as a matter of law. The insurance company not knowingly waived. There's a difference between knowing things that happened months after the policy than knowing what was going on before the policy, which is the determinative issue on rescission. And there was no opposition as to the facts on rescission. So I don't see how it was decided against me. At the very least, it warranted a factual determination to the extent based rescission on facts, not law. All right. Okay. We have a minute. So we'll now hear from Mr. Eagle for Ken. Yes. Thank you. And may it please the court. I'll address the two issues raised by counsel, starting, I guess, since we spoke last about the construction operations exclusion. The court in addressing the construction operations exclusion held a bench trial. And the court held a bench trial because the court needed to resolve whether the work that was being done, the scraping and painting of beams was separate from the other work that was being done. That was not looked at in the underlying action. It wasn't at issue in the witnesses and weighed the evidence and found that based on the credibility of witnesses, that it was separate. And that painting and scraping did not fall clearly and ambiguously within the construction operations exclusion. And that was not in any way, shape or form clearly erroneous. The argument that we hear today that we should be looking to the underlying court decision and therefore overturn a two day bench trial and the credibility of witnesses is in a case that had nothing to do with the separation of the work. In terms of the employee exclusion that was discussed, the words of the exclusion matter. And we didn't hear in the opening the words of the exclusion. And the exclusion is for bodily injury for a contractor performing services for which the insured, WW, may become liable. Performing services for which the insured may become liable. No court has ever upheld this language and enforced the exclusion in this context. Where the work was not for the insured because insured can't become liable for it. The district court we submit correctly held that it did not clearly and ambiguously include coverage, whereas here the contracted services was not insured. On the premises, it was leased to WMT for seafood business and WMT's principal hired the contractor to clean up the beans in its warehouse. WMT paid by check, a WMT check, gave it 1099. And all the affidavits, depositions, and documents in the record was that WMT had nothing to do with acquiring this contract for the work. The First Circuit and Benchmark and the New York Intellectual Provision and Merchants looked at this language and said that it doesn't apply, whereas here, the contractor is in imprivity with the insured. Because it's not in privity with the insured, how could you even possibly say that the contractor was performing services for which the insured may become liable? The USOI cases, different language, or, well, different exclusionary language, or the contractor was doing work for the insured, every one of them, or on behalf of the insured. And the American Empire decision by this court to rely on that case, it excluded coverage for an employee of any contractor. It didn't have the performance services for which the insured may become liable. And by the way, in that case, the work was being done for the insured, it was the insured contractor. So it's almost a double whammy. Your Honors, if there will be no rebuttal on the misrepresentation claim, I don't need to get into it because it wasn't argued, but if there will be, I'd like to say a few things. Well, I take it it was argued at the very end there. Sure. As to the rescission claim, I'll just highlight a few points. The linchpin of their argument is that they didn't have constructive or actual knowledge of their basis to pursue rescission until April, 2017. However, two and a half years before that, they got notice of the accident and admittedly learned that their insured was using a forklift in a warehouse, which is the basis for their rescission claim. They said, well, we can't ask. First off, it's newly minted on appeal. There's no evidence in the record that they didn't ask because they couldn't ask. On the contrary, they testified nothing was stopping them from asking, and they continue to speak with the insured representative after the disclaimer. The law doesn't prevent an insurer from picking up the phone or sending a letter. They didn't ask or inquire because they didn't inquire and they were dealing with constructive knowledge. After that, they not renew the policy and say, hey, the policy is still in effect, but we're not going to renew when it expires months later. I think that's ratification. But if we're not sure, then they ratify the policy by disclaiming coverage for the underlying action on other grounds, which isn't permitted under the Lawyer and FBI. Can I interrupt you for a second? Can I interrupt you for a second? This is Jeff Sullivan. If we agree with you on rescission, do we need to even get to ratification? If you agree with us on rescission, you mean in terms of the delay? Yeah. No. That would be the answer. If you agree with us that as a matter of law, there was a delay, you don't need to get to ratification. Ratification precludes rescission regardless of the delay. It's acting inconsistently and inconsistently with repudiation. So the point is, this is Judge Lynch, these are two independent grounds and you could win the rescission issue on either one, either on undue delay or on ratification. That's correct, Judge Lynch. There is one other thing I just wanted to stress if I have a moment. If we don't have enough by the point of two and a half years ago in terms of delay, which we do, it's constructive notice under Banquet, Laurier, and NCI, they get the depositions from the underlying action a year before they seek rescission, one month before filing the CJ, and USLI and their coverage counsel who is involved in whether to file a rescission claim receive the depositions from the underlying action. And now they say, well, that just created speculation. That's clearly false. Their own internal document at 737 in the record says that the depositions show a misrepresentation at the time of the application, years before the accident. At 737, their claim adjuster tells their in-house counsel they learned from the depositions that the insured misrepresented on their application that they do not use mobile equipment and they don't have operations involving the warehousing of others' goods. Because from the deposition, they learned, in fact, this was taking place for years. And then after that, they have an internal memo at 732 where they give the real because they were all pow-wowing. And at this time, we can't file a rescission action when we file the CJ because our compliance department is non-renewed and feels uncomfortable because they non-renewed over the years for the same reason. And then one month after getting the deposition, they again ratify by filing the CJ on other grounds without asserting rescission. And then 10 months later, they make their motion to amend the rescission claim. After ratifying several times and after being two and a half years late. If there's no questions at all, that's all I have, Your Honor. Okay. Thanks very much. We'll now hear from Mr. Reveniotis for a minute. Yes, Your Honor. On the rescission point, my point earlier is that yes, there's a my brief detailed, including the dates that were kind of matched there by the representation by my adversary. My role initially as counsel was to only prosecute the exclusions. I'm not the gatekeeper on rescission. I did get deposition transcripts to use in the context of pursuing the arguments for the exclusions. And I reverted back to my client. All of this was explained, but at the very worst for my client. Why does that matter? I mean, it's all a factual issue. No one's accusing you of malpractice. No, Your Honor. What I'm trying to explain is the record is clear as to what happened. We have a reasonable explanation as to everything that was clear. Mr. Reveniotis, the record is clear that Ms. Martinez sent you an email on June the 7th saying that the decision to file without the rescission action was because their compliance department said they don't feel comfortable adding a rescission count because we non-renewed the policy over a year ago for the same reasons. So please file without the rescission action. Now, at that time, you, but also the people at the insurer, your client, had the deposition transcripts. And if they didn't review them before making this decision, they made the decision based on a different reason. And it seems very strange to say they can have all that information and ignore it. And then 10 months later, come around and claim rescission. Your Honor, that's what I mean by the time crunch that is detailed in my records. In fact, the decision not to pursue rescission in the first go around in the memo back was based on discussions by me and correspondence by me prior to getting. There's only a few days, months in the time period between my recommendation as to whether or request as to whether to file the lawsuit with rescission or not. And then the claim handler getting the transcript and then being told don't file rescission and then the ability to two ships that crossed in the night at that point. And to make the insurance companies be on air triggers for everything that happens to bring a trigger years before a year before when the non-renewal took place, they knew that this accident happened in a warehouse with a forklift. And it's only a one-year policy. It's not like in ancient history, they had gotten this application and now who knows what happened in between now and then. It's a pretty reasonable inference to think that maybe we should look into. You're on inquiry notice. I don't mean you personally, the insurer is on inquiry notice to look into whether what happened here was a one-day fluke or what happened here was something that's been happening since the application was filed. That doesn't seem like a stretch. But there was no indication to say that prior to the application, this was happening. All the information given to them at that point was that it was a one-day fluke. This wasn't something that was related to them. It only came later on. The non-renewal says during the policy period, this thing came up. They're not basing it on things that happened before the application. No one's asking them to be on a hair trigger. The question is they're on inquiry notice, so they should inquire. That's what's required. If you inquire and decide, oh, we're being told a lot of things and I guess we don't have enough evidence, that's one thing. But here, you're saying they are under no obligation to inquire. They're even forbidden to inquire, you say. Well, yeah. At the point where it came relatively close thereafter, August was the notice of the accident, first awareness of this thing. September 26th is the disclaimer. At that point, they're in adversarial positions. More information came on. We did inquire. I inquired as counsel. We went back and forth on this thing. But the point is, it's a factual issue as to whether our explanation is reasonable. The court below shouldn't have decided this factual issue on rescission and made it the whole center without getting to the merits of the case. That's why I focus on the other aspects de novo, because I think on that issue, at the very least, it should be tried for a factual determination. But on the exclusion, again, I focus on the difference between paragraph 1 and paragraph 2. Counsel kind of blurred the line between the two. Nowhere in 2 does it say that the contractor has to be doing work for the insured. Nowhere in that second part of the exclusion does it say the bodily injury of a contractor is related to work being performed, different than paragraph 1, which clearly says, when we want to exclude people that are working for our insured, we're going to exclude that. Okay. Paragraph 2 is much broader. Thank you, Mr. Roueniotis. We will reserve your decision. Thank you both. That concludes the arguments that we have scheduled for today. We have one other case, Buckingham versus Lewis submission. So let me ask the clerk of court to adjourn the court. Before I do that, let me thank her. Let me thank all the people at the Second Circuit who have sort of enabled us to function pretty well under difficult circumstances nationally and locally. So thank you all, and have a good day and nice weekend. Court sents adjourned.